Your Honors, and may it please the Court, I represent Michael Adair regarding a Social Security decision in which his application for disability benefits was denied. We appealed that decision because the ALJ and the medical expert upon whose opinion he relied, or testimony he relied, did not comply with Social Security's rules or Eighth Circuit law. That alone is reversible error. Additionally, neither the medical expert's testimony or the ALJ's decision is based on the record as a whole. And that is the standard for administrative decisions. The United States Supreme Court held in universal camera and they upheld that in BSTEC, a recent decision. When you review an administrative decision, you are to look at the record as a whole. And when the court reviews the decision, they're supposed to consider whatever detracts from the ALJ's findings. And with that in mind, I would like to refer the court to the ALJ's decision in this case, which is in the Plaintiff's Addendum A. And when you look at that decision, the two issues that we appealed is there's a five-step sequential evaluation process for disability benefits. And we do not believe the ALJ's decision was supported by his substantial evidence regarding step three, whether Plaintiff's severe heart impairments for a person his age, unusual heart impairment. He's been told if he lives until he's 50, that will be a miracle. So under... Was that in the record? Yes, it is, Your Honor. It's in the deposition, March 14th deposition of his treating cardiologist. He said if he can get into 50, that would be an excellent result. So at step three, we do not believe the ALJ's decision was supported by substantial evidence and we believe he failed to comply with Eighth Circuit law and Social Security's rules. Also, his residual functional capacity determination is similarly... Can I ask you, so there is a case that is remarkably similar to this one, at least from what I can tell. And I don't know that either of the parties cited it. It's KKC, X-Rail Stoner v. Colvin, 818F3-864. It also involved a heart condition. And actually, in many ways, it was worse because in terms of the various objective medical findings, they were just a step worse than your client's. And we still affirmed the ALJ's decision under the listed impairments. Are you familiar with that case? I'm sorry, Your Honor. I am not. And I don't know what the arguments were in that case. And I don't know. So in this case, Mr. Adair had his treating cardiologist who said that his heart impairment matched or equaled a listed impairment. And sometimes I notice the court or people who review these cases forget about equals. So at step three, you can either meet exactly the requirements or your impairment, heart impairments, of which he has many. I don't know the... His ejection fraction is in the 20 for the most part. Okay. And whether the combination of your impairment... So also, we're going to be looking at his obesity, which came as a result of his heart impairment. And he had a BMI of 40 in 14 in the two reports, the only reports. In fact, the medical expert and the ALJ primarily relied, not exclusively, on two pages from a 1,019-page record to say he didn't meet or equal listing. But if you look at the ALJ's decision, the reason... So we've got a treating cardiologist and under Social Security's rules at 1527, the treating physician's opinion is to be accorded great weight. An examining physician's opinion is to be accorded great weight. And in fact, given controlling weight as long as it's consistent with the evidence. So is what the treating psychologist said... I'm sorry, cardiologist said, and his opinion is at 836, transcript 836, is that he has chronic heart failure and ischemic heart disease. And he based that on several echocardiograms, a nuclear stress testing, a coronary angiography, and he underwent quadruple bypass surgery. So the ALJ said he was... Even though the medical expert that they utilized was not a treating physician or examining physician, he was going to accord him great weight under the factors of 1527, under other factors, because of his knowledge of the program and if he reviewed the records. But is what his testimony showed is he does not have knowledge of the program. He did not know the requirements of the listings. He did not know what was contained in the record that he reviewed. He did not review the record as a whole. He relied on two pages. And so then there wasn't a reason to give his opinion greater weight. Now the ALJ could have asked the treating cardiologist questions if he had wanted to. Most importantly, we have to... The substantial evidence standard again is the record as a whole. And the medical expert did not review the record as a whole. He did not know the requirements of Social Security's rules, the reason he was being proffered. And that was really the only reason that the ALJ accorded his opinion greater weight. And if you look at the ALJ's decision, you'll see that that's true. And also, if you just look at, you'll see the ALJ at 25, he just kind of talked about those two pages of evidence. He said why he was courting more weight to the medical expert. And then he said, oh, and I've also considered the obesity. And in the brief, in our briefing, you will see all the problems that there are with that medical expert. So essentially is what you have, is you have a claimant with a treating cardiologist who's willing to go forward and review the listings and look at all the medical, who's treated him, who's observed him, who's interacted with him. And then you have the he doesn't meet or equal the listings. Why? Well, he just doesn't. Well, the attorney asked him, did you review the stress test? Or do you know if a stress test was done? He said, I don't know. And that is a critical part of the listings. In fact, the doctor finally acknowledged that he met, he said he met 402A and B3, but he needed to meet also one and two. And that's not true. It's one or two or three. So he just, he didn't know the rules and you can't proffer someone to take away someone's benefits who doesn't even know the rules under which he's supposed to be testifying. I'm going to reserve the rest of my time. Did Dr. Farrell ever elaborate on why he thought the heart condition very seriously limited Adair's activities of daily living? I'm looking at this check, kind of this checkbox form interrogatory that's on 836 to 838. And it doesn't, it doesn't get into that. Is there any other place where Farrell gave any more detail? There is, your honor. It's in all his records. In all his records where he talks about the fact that Mr. Adair is severely fatigued. I, I cited all in my brief, he's very fatigued and that's consistent with his impairments. I read about the fatigue. I meant anything specific about, about what I'm sorry, about what's in the listing that it has to very, very seriously limit his activities of daily living. It's one thing to say he gets fatigued, well, seriously fatigued and so forth. But I'm asking, did he ever translate that into what the man can do day to day? Well, he knew what his activities of daily living were because he interacted with him and talked to him. He knew all the troubles he had. He saw him. But who did not know what his daily activities was, was the medical expert. And it was incumbent upon him and the ALJ to, the ALJ to tell him what the daily activities were. And the daily activities are in the testimony and in the adult function reports. And consistent with his are not much at all. He's very fatigued. Now, defendant talks about the fact that he was only fatigued with vigorous exercise. That's not true. That is not true. That is not what the record said. One time in 414, he said, I have chronic breathlessness and I have chronic fatigue and it's affecting my ability to perform somewhat vigorous exercise. The fatigue is documented throughout the record. It's consistent with his impairments. I'm going to, unless you have any questions, I'm going to reserve my time. Thank you. Thank you, Ms. Aronson. Ms. Colchin. May it please the court. My name is Pamela Colchin. I represent the Commissioner of Social Security. In this case, plaintiffs suffered a heart attack in October 2011. That resulted in some surgical procedures. And at the time, plaintiffs filed a claim for benefits, which was denied by an ALJ on April 8th, 2013. The ALJ did not file a claim for benefits. The ALJ plaintiff did not appeal that determination. It became final. In the instant case, the ALJ denied plaintiff's request to reopen that. And that determination is res judicata before this court. Therefore, the relevant time period here begins on April 9th, 2013, the day after that prior ALJ decision. So what does that mean in terms of the evidence that can be considered? It means that as the ALJ focused here, the ALJ focused on whether or not plaintiff was disabled from that date through the date of the ALJ decision, which was in August 2015. Not on whether or not plaintiff was disabled prior to that time, because that period is now res judicata. Initially, during the relevant period of time, plaintiff denied shortness of And he did have to have a quadruple bypass surgery. However, after that surgery, his treatment was only routine six-month follow-up treatments with Dr. Farrell. And he repeatedly denied shortness of breath, chest pain, or palpitations. And despite plaintiff's reports of severe fatigue, what Dr. Farrell reported was, quote, some generalized fatigue. And he did associate it with, at one point, vigorous exercise, and at other points, with exercise, not with just routine activities of daily living. The ALJ's decision, then, is supported by substantial evidence, which the Supreme Court has defined as meaning, and meaning only, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. I do quickly want to note, for your honors, that in the interim time between the ALJ's decision, the agency has undergone some fairly dramatic changes to rules and regulations regarding consideration of subjective allegations, medical evidence, specifically medical opinions, and consideration of mental impairments. All of those changes occurred after the claim in this case was filed and after the ALJ decision. So they are not applicable here. And that is noted in our brief. But as those cases are sort of alternating, I think, between the court, I wanted to make that point. Counsel, I wanted to ask you the same question I asked opposing counsel about the Colvin case, the one I cited earlier. Again, that one, actually, I found my note on it. A lower ejection fraction, the claimant's name was Carter, a very similar claim, and had more serious functional limitations. Carter did than Adair. Are you familiar with that case at all? The name sounds familiar, but I'm not familiar with the specific facts or findings. Sure. And, well, every one of these cases is different. I was just curious because it's very, very close in terms of the arguments that are being made. Thank you. Plaintiff's main argument here regards whether or not his impairments meet the criteria of the listings. Plaintiff has the burden to prove that his impairments meet all of the criteria of the listings. And the ALJ acknowledged, consistent with Dr. Farrell's statements, that plaintiff satisfies the first criteria of listing 4.02. That is the one that is represented by the testing results, the very low ejection fraction. However, that does not meet all the criteria of the listing. And the ALJ then proceeded to consider the other criteria, as did Dr. Krishnamurthy, who is the medical expert who testified at the hearing. Dr. Krishnamurthy specifically discussed those criteria of the listing and demonstrated a knowledge of that listing by his discussion of what the evidence did and did not show. The ALJ properly gave that opinion substantial weight because it was consistent with the evidence of plaintiff's activities, which did not show very serious limitations in those activities of daily living. Did it contradict the treating physician? Yes, Your Honor. Dr. Farrell's opinion is a conclusory, mostly checkmark opinion, indicating that plaintiff meets the criteria of the listing. When asked to show in what way plaintiff meets those criteria, Dr. Farrell listed testing results. Those testing results do not demonstrate the 4.02B criteria, which are similar to the criteria in 4.04, the other listing that plaintiff has raised. Therefore, Dr. Farrell's opinion- Meaning what? Meaning what? They don't demonstrate the 4.02B criteria. What do you mean by that? Which criteria? Excuse me, Your Honor. The very serious limitation of the ability to initiate sustained or complete activities of daily living and the inability to perform on an exercise test due to shortness of breath. Then there's one that's not at issue, which involves acute episodes of congestive heart failure. None of those are shown in Dr. Farrell's opinion, and they're not consistent with his records, which again show in April 2014 that plaintiff had, again, some generalized fatigue with, quote, vigorous exercise. In November 2014, Dr. Farrell's notes indicated that plaintiff was undergoing daily exercise, and plaintiff was encouraged by Dr. Farrell after having a knee surgery, which isn't generally of issue here, as it was found non-severe. Dr. Farrell encouraged him to continue his home exercise program. Further, plaintiff and his spouse reported activities that are not inconsistent with this sedentary RFC found by the ALJ, including shopping for small items, watching TV, playing video games, using a computer, helping his children with homework, driving his children to school, coaching his children's sports from the sidelines, not alleging that he was engaging in sports. Those findings are not consistent with the very serious limitations required in the ability to sustain, initiate, or complete activities of daily living. What part of the medical record did the ALJ rely on to make the RFC determination? The ALJ relied on all of the evidence expressly. Specifically, the ALJ gave substantial weight to the opinion of Dr. Krishnamurthy, who provided limitations that are similar but not exact to what the ALJ found in the RFC, as well as the opinion of Dr. Trowbridge, who was the state agency medical consultant who reviewed the record at the initial level. Did Trowbridge actually treat or examine the claimant? No, your honor. Dr. Trowbridge would have reviewed the records that were in the record at the time of the initial decision. However, the ALJ did not review those records only. Instead, the ALJ looked to those opinions and found that they were consistent with the record as a whole and therefore gave them great weight. Again, they were consistent with the fact that plaintiff was engaging in some activities that were consistent with an ability to perform sedentary work. In fact, at his deposition in March 2014, Dr. Farrell specifically testified that available at where he previously worked. That indication is not consistent with Dr. Farrell's opinion that plaintiff met or equaled the criteria of either listing. Plaintiff has alleged that Dr. Krishnamurthy and the ALJ relied on... On that last point, do you mean because saying that he could do a desk job is inconsistent with saying that he's very seriously limited in his daily activities? Yes, your honor. That if someone could perform a sedentary job, that would be an opposite to being very seriously limited in the ability to initiate, sustain, or complete activities of daily living. It would also be inconsistent with, as the Supreme Court has described, the nature of the listings, which are to cut off the consideration only for those very serious impairments that absolutely result in disability. So someone who their own treating physician said could perform a desk job, it would be inconsistent with saying that person could also met or equal the criteria of the listing. However, the ALJ looked at all of the evidence in making those determinations, including plaintiff's subjective allegations. Oh, I'm sorry. I thought I heard one of you. Including plaintiff's subjective allegations, as well as the nature of his treatment. Plaintiff has said that the ALJ and Dr. Krishnamurthy relied on only two pages in the record. That is simply inaccurate. The ALJ in his decision clearly refers to many pages of the record and states repeatedly that he considered all of the Dr. Krishnamurthy specifically refers to two treatment notes. It is notable that after plaintiff had his surgery in October 2013, he only went to the doctor every six months, other than for the treatment for his knee impairment, which was acute and resolved within 12 months. So because he was only going to the doctor every six months between October 2013 and the date of the ALJ decision in August of 2015, there would have only been three, maybe four appointments with Dr. Farrell. And that is indicated in the record. And at those records, plaintiff repeatedly denied shortness of breath, chest pain, or palpitations. The record contains numerous pages that are merely readouts from his ICD, the pacemaker that was installed prior to the relevant time period. And those are events recorded by the ICD. The ALJ therefore properly considered the evidence in determining and gave proper consideration and articulated his reasons for giving weight to the medical opinions with regard to the listings. The ALJ also properly considered plaintiff's obesity in combination with his cardiac impairment. No doctor, including Dr. Krishnamurthy, who specifically mentioned obesity in combination, has indicated that plaintiff's obesity either alone or in combination meets or equals the listing. As the court is probably aware, there is no listing for obesity. There was many years ago, but there is not any longer. And obesity can only be considered in connection with other listings. But no doctor has indicated that alone or in connection with his other impairments that plaintiff's obesity results in equal or meeting any criteria of the listing. He also challenges the hypothetical used by the ALJ. What's your response? Your Honor, that opinion or that argument seems to merely be a repetition of the argument objecting to the residual functional capacity. The hypothetical question to the vocational expert was identical to the residual functional capacity, which was consistent with the record as a whole, as I have described. And therefore, the vocational expert's testimony was proper. I don't believe there's a separate argument with regard to that. Well, I guess part of it is saying that the question should have included the knee condition and that that wasn't included and that would render it inadequate. The knee condition was found non-severe because it was acute and resolved with surgery. And a non-severe impairment, while considered throughout the relevant time period, by its nature, a non-severe impairment does not result in more than minimal limitations. In addition, plaintiff was limited to only sedentary work, meaning he would be seated most of the time. He could not climb any ladders, ropes, scaffolds, crawl, kneel or crouch, which would take into account any limitations that resulted from an acute knee problem that had resolved. Overall, the ALJ's decision is supported by substantial evidence on the record as a whole. Therefore, this Court should affirm that decision. And if the Court has no further questions? Thank you, Ms. Colchin. Thank you, Your Honors. Ms. Ernst, your rebuttal. Your Honors, I just want to point out certain things initially. It is not true that he did not have a shortness of breath or fatigue during the period in issue 413 to 1214. It is not true that he was only seen every six months. That is a fallacy. It is not true that Dr. Farrell said this man could perform a desk job. When this first happened in October 11, they were talking about that. As was stated, the period in issue here is from 413 to the date of the ALJ's decision. During that time, he was seen on 613, he was seen on 913, he was seen on 114, he was seen on 414, he was seen on 1114. His medications were adjusted because he was so tired. They were adjusted on 613. They were increased on 913. They were decreased on 1114. The defendant argues there were no side effects. There were side effects, and Dr. Farrell talked about them. The meds he was on made him very tired. What did Dr. Farrell say about the desk job if he did not say what the government says? A person asked him about it in a deposition, and he said that we thought about that. Yes, maybe he could do a desk job, but he did not say he could do a desk job. He did not say that. But when he said he met our equal listing, then he did say that. Remember, that period of time was in 11 and 12. We are in 13. I would like you to notice when you read the deposition, you are saying the deposition was? The deposition was 314, but they were talking about when he first was unable to do his work. They were not talking about his condition from 413 to present. Another very important point that is left out is that in 12 of 14, they were going to switch to six-month intervals, but in 12 of 14, he decompensated, and so they could not do that. You will not see that in defendant's brief. I really want to bring you to, please look at the RFC that the ALJ did. All he did was pull over the severe impairments arguments, the step three argument, and he did not consider the record as a whole. I do not even believe he said he did, but look at page 28. He pulls over what he did under step three, and then he says, regarding the claimant's credibility, the description of the symptoms are inconsistent. Why? Why are they inconsistent? Why is it inconsistent for a person to be very tired? Look at his adult function reports. They have also been mischaracterized, but he has a duty as the ALJ denying someone's benefits to say, why is it inconsistent? What is inconsistent? Your step three finding is not your RFC finding, but that is what was done here, and Dr. Trowbridge didn't look at the record. We don't know what her specialty is, but Eighth Circuit law says the opinions of non-examining, non-treating physicians do not constitute substantial evidence. We have a very credentialed cardiologist who reviewed this check-the-box forms to improve your position in these cases. We have criticized the check-the-box forms and said it is permissible for an ALJ to discount them. I assume this came from counsel to Farrell. Right, and you know, in Social Security, there was the treating physician rule. I have seen check-box forms that wasn't my form, but this isn't one. He was very detailed, and the ALJ could have asked him more questions, but we also had his records. We also had a deposition, but a medical expert who doesn't know Social Security's rules and did not review the record, two pages, he based everything he said on two pages, cannot override a treating cardiologist to appear at a hearing. Social Security claimants can't afford that, and that's the reason for the treating physician rule, so that the government can't bring someone in for $200, say he doesn't meet the listing, doesn't know the rulings, doesn't know the regs, and then the claim's denied. Thank you, your honors. I appreciate your time. Thank you also, Ms. Colchin. We appreciate your presence before the court and the argument you've made. We'll take the case under advisement.